**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER F.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 20 C 5365** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of

the Social Security Act ("Act"). 42 U.S.C. §§416(I), 423, over eight years ago in May of 2014.

(Administrative Record (R.) 178-179). She claimed that she became disabled as of April 1, 2010,

and was unable to work due to degenerative disc disease, osteoarthritis, bulging/herniated disc,

spondylitis, bone spurs, facet syndrome, myofascial pain syndrome, migraines,

depression/anxiety/PTSD. (R. 226). Over the next three years, plaintiff's application was denied

at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and

appeals council. She filed suit in federal court and won a remand to the administrative level where

her application was denied again. The plaintiff filed suit again under 42 U.S.C. § 405(g) on

September 10, 2020, and the case was fully briefed as of September 22, 2021. [Dkt. #25]. Seven

months later, the Executive Committee transferred the case to me as I was the magistrate judge who

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

remanded the matter four years earlier.  [Dkt. # 27].  It is the ALJ's most recent decision – from July 26, 2019 – that is before the court for review.  See 20 C.F.R. §§404.955; 404.981.  The plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## I.

Given how long the parties have been waiting since briefing this matter, not to mention the age of the case, we will dispense with a recitation of the medical record, focusing instead on the medical evidence that is pertinent to the plaintiff's arguments for remanding the ALJ's decision denying her disability benefits for a second time. After a second administrative hearing –  at which plaintiff, represented by counsel, and a medical expert and a vocational expert testified – the ALJ again determined plaintiff was not disabled.  The ALJ found that plaintiff  had two severe impairments:  degenerative disc disease and status post spinal fusion surgery.  (R. 878).  The ALJ found that plaintiff's mental impairment – mood disorder –  no more than a mild limitation in the areas of concentrating, persisting, and maintaining pace and adapting or managing herself, and so was a non-severe impairment.  (R. 879).  The ALJ then determined that none of plaintiff's impairments, singly or in combination, amounted to a condition that met or equaled an impairment assumed to be disabling in the Commissioner's listings, focusing on listing 1.04.  (R. 880-81).

The ALJ then determined that plaintiff could perform sedentary work which is performed mostly while sitting and involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567.  In addition, the ALJ found that plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds; she could occasionally balance, stoop, kneel, crouch, or crawl and

occasionally be exposed to vibrations and hazards, such as moving machinery, or unprotected heights. (R. 881). The ALJ went on to summarize plaintiff's allegations about the limiting effects of her impairments (R. 881) and reviewed the medical record. (R. 881-83). The ALJ concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 883). In so finding, the ALJ noted objective studies showing mostly mild degenerative changes, successful surgery and mostly effective treatment, and plaintiff's activities. (R. 883-84).

The ALJ gave the opinions from the DDS reviewing physicians that plaintiff could perform light work "some weight," but found they were not sufficiently restrictive and somewhat outdated. Instead, the ALJ felt the medical record better supported the opinion of Dr. Munoz, the medical expert who testified that the hearing and thought plaintiff was limited to sedentary work. (R. 884). Dr. Munoz reviewed the medical evidence and concluded plaintiff was restricted to sedentary work, but was not disabled. (R. 917). He though she could sit six hours in a workday, and stand and walk occasionally. (R. 921, 922). The doctor explained that plaintiff's surgery was successful and there were no complications. He said the majority of patients who go through such surgery have a capacity reduced to sedentary work. Dr. Munoz found nothing in the record that would restrict plaintiff from working entirely. (R. 918). He said he couldn't say that the pain plaintiff was expressing correlated with the physical findings. (R. 919). The ALJ gave Dr. Munoz's opinion "great weight" as supported by the record, which the doctor reviewed in its entirety. (R. 884). The ALJ rejected the opinions of plaintiff's treating physician, Dr. Ghani, due to inherent inconsistencies and the minimal medical record. (R. 884).

Relying on the testimony of the vocational expert, the ALJ determined that, while plaintiff could no longer perform her past work as administrative assistant, she could still perform other work that exists in significant numbers in the national economy. Examples of such work were: microfilming document preparer (Dictionary of Occupational Titles (DOT) 249.587-018; 31,055 jobs in the national economy), pari-mutuel ticket checker (DOT 219.587-010, 16,261 jobs), and call out operator (DOT 237.367-014, 14,294). (R. 886). Accordingly, the ALJ concluded that plaintiff was not disabled and not entitled to Disability Insurance Benefits. (R. 886-87).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill,* – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must

defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, at least thus far, the ALJ also has an obligation to build what the court has called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." As *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) put it: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." [2] *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record..."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping.

---

[2] The term "accurate and logical bridge" was first used by Judge Spottswood Robinson in a non-Social Security context in *Thompson v. Clifford*, 408 F.2d 154 (D.C.Cir. 1968), which said "'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." 408 F.2d at 167. Judge Posner, first used the phrase in a Social Security context in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) and would be the first to acknowledge that it was not meant as a self-defining test or formula. *Cf., United States v. Edwards*, 581 F.3d 604, 608 (7th Cir. 2009)("We recall Holmes's admonition to think things not words...."); *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004).

More recently, the Seventh Circuit, in a Social Security case explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties, ... No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard: one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare. But no matter what one's view of the "logical bridge" requirement, no one suggests that the "accurate and logical bridge" must be the equivalent of the Point Neuf. The subjectivity of the requirement makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged, or when upheld at the district court level and challenged again before the Seventh Circuit.

But, at the same time, the Seventh Circuit has also called the "logical bridge" requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Indeed, prior to *Sarchet*, the Seventh Circuit "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence . . . in cases in which considerable evidence is presented to counter the agency's position." *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984). Later, in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), the court was more explicit when rejecting a plaintiff's argument that an ALJ failed to discuss his complaints of pain:

> We do not have the fetish about findings that Stephens attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order

6

to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).

The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Id.*, at 287 (citations omitted). Or, as the court succinctly put it, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Id*. at 287-88. Given the record, and plaintiff's inability to point to evidence that shows he cannot perform the simple work the ALJ found he could perform, The ALJ has done enough here.

## III.

The plaintiff makes two arguments for remanding the ALJ's denial of her application for Disability Insurance Benefits. First, she contends that the ALJ failed to properly consider the opinion from her treating doctor that she was capable of sitting for no more than two hours out of a whole day and sitting and/or standing for no more than one hour. Second, she claims that the ALJ was wrong to have rejected her subjective allegations regarding her limitations. Any other arguments the plaintiff might have made are, of course, deemed waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

## A.

First, the plaintiff argues that the ALJ did not properly evaluate the opinions from her treating physician, Dr. Ghani. On August 18, 2015, Dr. Ghani filled out a "Physical Capacities Evaluation"

form from plaintiff's attorney. (R. 772-73). Under what plaintiff could do "Total During an 8-Hour Day", Dr. Ghani circled 2 hours for sitting and 1 hour for standing/walking. He checked that plaintiff needed to alternate between sitting and standing throughout the day. The doctor checked the blanks indicating that plaintiff had no issues with using her hands. She could not, however, use foot controls. (R. 772). Dr. Ghani checked blanks indicating plaintiff could frequently lift up to 5 pounds, occasionally lift up to 20 pounds, but never lift more. He checked blanks that indicated plaintiff could occasionally climb, stoop, crouch, and crawl, and frequently balance, kneel, and reach above shoulder level. He also checked blanks had a total restriction against work at unprotected heights, moderate restrictions against working around moving machinery and driving automotive equipment, and no restrictions regarding temperature, dust, or fumes. (R. 773). He checked blanks indicating plaintiff suffered from disabling fatigue that prevented her from performing even sedentary work. (R. 774). He also checked blanks indicating plaintiff suffered from pain due to lumbar radiculopathy which also prevented her from performing sedentary work. (R. 775). On April 4, 2016, Dr. Ghani filled out an identical "Physical Capacities Evaluation" form from plaintiff's attorney in identical fashion. (R. 792-93).

The ALJ didn't think much of Dr. Ghani's opinions and gave them "minimal weight." He explained:

> Dr. Ghani completed a statement on August 18, 2015 for essentially less than sedentary work due to both physical and mental impairments (Exhibit 14F). As noted by Dr. Munoz, the opinion limits the claimant to 2 hours of sitting and 1 hour of standing/walking but then indicates that she could lift 20 pounds. Given these inherent inconsistencies and the minimal record, the opinion is not supported by the evidence and is likely a sympathetic opinion. For the same reasons, I gave Dr. Ghani's April 4, 2016 opinion (Exhibits 16F/1-6 and 18F/8-13) minimal weight. It is the same as the August 2015 opinion described above (Exhibit 14F) but for the date of preparation.

8

(R. 884).

The plaintiff's first issue with the ALJ's dismissal of Dr. Ghani's opinion is that the ALJ failed to say that Dr. Ghani was plaintiff's treating physician and failed to consider his examinations. [Dkt. #19, at 4]. But, that's a bit of a nitpick. While the ALJ should consider the regulatory factors that go into the weighing of medical opinions – (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency with the record as a whole; (5) specialization – the ALJ does not have to recite them chapter and verse. *See, e.g., Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021)("... we will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor...."); *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012). And, in any event, the ALJ clearly knew Dr. Ghani was a treating physician (R. 920). The problem for the ALJ with Dr. Ghani's opinions wasn't the number of times he saw plaintiff, it was the fact that they were divorced from the objective medical evidence – both Dr. Ghani's findings and other findings – and were internally inconsistent.

Plaintiff, of course, differs with the ALJ's assessment. She points out that Dr. Ghani examined her "myriad times from 2009 through 2015" (R. 618-59)" and that his treatment notes include "observations of edema (R. 621), neck pain (R. 626) and back pain (R. 630)." [Dkt. #19, at 4]. That's not much in the way of findings to support an opinion finding a patient is essentially bedridden for most of every day. On April 28, 2014, there is, indeed, a mention of "edema" on the line next to "extremities", but no indication where the swelling was. Perhaps more importantly, Dr. Ghani noted that motor and sensory function were normal. (R. 621). As for "neck pain" and "back pain", those aren't even medical findings; they are simply Dr. Ghani's recitation of plaintiff's

9

subjective complaints. ALJs have to rely on medical opinions "based on objective observations," not "subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Winsted,* 923 F.3d at 478; *Elder v. Astrue*, 529 F.3d 408, 413, 416 (7th Cir. 2008).

The plaintiff doesn't specifically go beyond those three unremarkable medical notes to identify any instances where Dr. Ghani made medical findings that support his dire assessment of plaintiff's capabilities. Instead, she directs the court to forty pages of Dr. Ghani's notes at R. 618-59. [Dkt. #19, at 4; 25, at 1]. That's not terribly helpful and, of course, it is not the court's task to sift through the record to identify evidence to support plaintiff's positions. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992) (holding that "compelling the court to take up a burdensome and fruitless scavenger hunt ... is a drain on its time and Resources"); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . ."). After all, presumably, plaintiff is in the best position to know which pieces of evidence support her claim and why. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). And, it is her burden to "identify[] any objective evidence in the record corroborating Dr. [Ghani's] statement." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). This is not merely a "concern" the court has, as the plaintiff characterizes it in her brief. [Dkt. #19, at 6 n.4]. It is a requirement that the Seventh Circuit has adverted to time and again. *See, e.g.,Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 510 (7th Cir. 2020)(". . . it is not the role of the court to search the record to find support for a party's assertion."); *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010)(". . . it was not the district court's job to sift through the record and make [plaintiff's] Connors's case for h[er]."); *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 691 (7th Cir. 2018)("It is not our duty 'to scour the record in search of

evidence.'").

But for the sake of thoroughness, the court did sift through those pages. As it happens, there is little or nothing in those 40 or 50 pages to support Dr. Ghani's opinion. Indeed, on almost all occasions Dr. Ghani made no exam notes at all:

January 8, 2009: right hip pain for two weeks; back pain worse the last two months; no exam notes (R. 659).

January 21, 2009: physical therapy helped on the day of; pain then flared up; no exam notes (R. 658).

January 23, 2009: sore right side of throat for two days; wanted medication for headache in left temple; no exam notes (R. 657).

February 6, 2009: complaining of low back and hip pain; exam notes illegible ("LS Difl[]; + muscle spasm; + Vel[]"). (R. 656).

March 24, 2009: epidural scheduled March 30, 2009; no exam notes (R. 655).

April 21, 2009: complaining of one-sided migraine; "+ SI Joint"; no other exam notes (R. 654).

May 14, 2009: lower back pain better the last few days, can sit, stand more time; 10 more weeks of therapy; migraines better; anxiety better; negative neurological exam; "Mus-skeletal: ↓[] SI Joint" (R. 653).

June 18, 2009: requesting lip medication for blister; exam notes were a sketch of a face with two Xs marked on the right side of the forehead (R. 652).

July 10, 2009: complaining of left knee pain that increased with walking; and right buttocks pain; exam notes were "Knee" with a sketch of a knee; and "Spa" with a sketch of buttocks marked with two Xs on the right (R. 651)

July 13, 2009: complaining of "L knee pain" at 6/10 and "L right back pain" at 8/10; exam notes were again a sketch of buttocks marked with two Xs on the right and the notation "SI Joint [illegible]"(R. 650).

July 22, 2009: cortisone injection of right knee, wants left knee MRI "cracking"; complaining of cough and sore throat; right knee pain increase last two weeks; right knee exam was positive for "cricter" (R. 649).

11

July 28, 2009: "review Rt, knee MRI/ wants cortisone injections"; complaining of cough, sore throat, earache getting better; exam notes were a sketch of the right knee with two Xs (R. 648)

August 12, 2009: right knee good; refill prescriptions; voice hoarse; no exam notes (R. 647)

September 10, 2009: complaining of right buttock pain running down right leg, increased over the last month; exam notes were a sketch of buttocks with three Xs on the right (R. 646).

October 6, 2009: complaining of grabbing pain in right buttocks since June; had L/S MRI, receiving pt; ear pain improved; exam notes were illegible ("dufil standing + Beirling") with a sketch of buttocks with just one X on the right (R. 645).

November 9, 2009: review labs; refill Xanax; follow-up sciatica pain; hasn't started meds; no exam notes (R. 644)

October 26, 2009: complaining of right buttock pain and above the right knee, painful to sit; lower back pain improved, pain decreased; no exam notes (R. 643).

January 8, 2010: complaining of a migraine for three days and ear wax; no exam notes (R. 642).

December 10, 2009: complaining of sore throat for a week; low back pain much better; no exam notes (R. 641).

February 8, 2010: spinal fusion set for Feb. 19th; complaining of jaw pain for 2-3 weeks; exam notes are two sketches which are in decipherable (R. 640).

May 21, 2010: no exam notes (R. 639).

June 18, 2010: wearing back brace L4-L5 spinal fusion; disability papers; no exam notes (R. 638).

July 8, 2010: fill out paperwork for disability (R. 637).

October 7, 2010: exam notes were negative LN now; decreased edema(R. 636).

December 22, 2010: complaining of very bad migraines and trouble sleeping; no exam notes (R. 635).

January 6, 2011: complaining of swollen feet with pain going up "[s]hin"; edema

noted; no other exam notes (R. 634).

January 14, 2011: no exam notes (R. 633).

April 18, 2011: sacroiliac injection six weeks earlier, pain at 5/10, improved; review of systems negative; no exam notes (R. 632).

May 12, 2011: swollen gland right side of neck and sick for two weeks; using Xanax at night for back pain; no exam notes (R. 631).

September 12, 2011: complaining of pain from left side of head to neck; insomnia despite Xanax; no exam notes (R. 630).

March 5, 2012: complaining of back spasm on the right side; no exam notes (R. 629).

May 2, 2012: two weeks after injections, pain was off and on at 5/10; complaining of pain in right ankle; red swelling was noted there, no other exam notes (R. 628).

July 30, 2012: complaining of shoulder pain near collar bone; no exam notes (R. 627)

June 3, 21013: complaining of pain from right side of head to shoulder; no exam notes on back or extremities (R. 626).

June 17, 2013: complaining of migraines; no exam notes on back or extremities (R. 625).

July 10, 2013: notes essentially illegible, although it appears there was right ankle weakness and decreased reflexes, pulses were good, no other deficits noted (R. 624).

December 5, 2013: sinus infection, no examination notes (R. 623)

January 29, 2014: no examination notes (R. 622)

April 28, 2014: neurological findings – motor and sensory – normal; no musculoskeletal deficits noted (R. 621).

As the ALJ found, the record is certainly "minimal." Examinations – or , at least, examination notes – were rare, and when they happened, Dr. Ghani's findings were mostly

unremarkable.[3]  It was entirely proper for the ALJ to reject the doctor's opinion given the lack of support from his notes.  *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021)("An ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes."); *Schaaf v. Astrue*, 602 F.3d 869, 874–75 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842–43 (7th Cir. 2007).

But, how about the rest of the record?  Plaintiff points to objective studies, and notes from her pain specialist Dr. Goodman. [Dkt. #19, at 5-6].  But, again, it's a leap from that evidence to Plaintiff only being able to sit for two hours and stand for one hour in the course of an entire day.

First, the imaging studies.  At the time of plaintiff's back fusion surgery in February 2010, an MRI – as the ALJ indicated (R. 881) – showed mostly what the physician felt were mostly insignificant abnormalities.  There was grade 1 anterolisthesis of L5 on S – the mildest grade, and usually asymptomatic or mildly symptomatic,  https://www.medicalnewstoday.com/ articles/319404#treatment – and "no other significant abnormalities in the lumbar spine."  There were mild disc bulges at L2-3, L3-4 with no significant stenosis or narrowing.  At L4-5, there was mild disc bulge with mild to moderate central canal stenosis and mild narrowing.  (R. 423), Contrary to plaintiff's brief [Dkt. #19, at 6 n.4], there was no mention of a herniated disc.  *See Zurawski v.*

---

[3] Given the lack of exam notes, one can understand why the ALJ wrote that Dr. Ghani's opinion was "likely a sympathetic opinion." (R. 884).  The Court of Appeals has repeatedly observed that physicians may "bend over backwards" to assist a patient in obtaining benefits. *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). In the absence of physical examination findings, it would seem that Dr. Ghani's opinion was not based on "medical judgment, but instead only [plaintiff's] own account of her symptoms." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  But, ALJs have to rely on medical opinions "based on objective observations," not "subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Winsted*, 923 F.3d at 478; *Elder v. Astrue*, 529 F.3d 408, 413, 416 (7th Cir. 2008).

*Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("However, the objective medical evidence shows that [plaintiff] had a bulging disc, not a herniation.").

Further on in the record, an MRI of the cervical spine in June 12, 2013, showed mostly "very mild", and no more than to "mild", degenerative changes (R. 384). X-ray of the lumbar spine showed plaintiff's fusion to be in good position and no other abnormalities. (R. 686). Cervical spine x-rays on September 14, 2014, showed straightening of the normal cervical lordosis but no significant degenerative disc disease or narrowing. (R. 689). On January 26, 2015, an x-ray of the lumbosacral spine, showed the spinal fusion again in proper position and, again, grade 1 anterolisthesis at L5-S1 (R. 823). The ALJ noted all these findings as well and commented, correctly, that they tended toward mild or minimal. (R. 883-84).

Then there are the notes from Dr. Goodman. They are slightly more informative that Dr. Ghani's notes but, again, examination findings are few and far between:

> February 9, 2011: lower back pain decreased, mild to moderate pain behavior, SI joint tenderness (R. 477-78)
>
> May 18, 2011: pain decreased by 80%, gait normal, mild pain behavior (R. 474-75).
>
> October 10, 2011: pain decreased overall by 50%, gait antalgic, mild pain behavior, (R. 469-70)
>
> January 18, 2012: lower back pain decreased, gait antalgic, mild to moderate pain behavior, SI joint tenderness (R. 466-68)
>
> March 7, 2012: pain increased overall by 30%, gait antalgic favoring right, mild pain behavior, SI joints tender (R. 464-65)
>
> May 30, 2012: pain decreased overall by 50%, gait antalgic favoring right, mild pain behavior (R. 460-62)
>
> October 22, 2012: lower back pain decreased; gait antalgic favoring left side, mild to moderate pain behavior, hip exam and range of motion normal (R. 458-60)

15

April 30, 2014: moderate tenderness right SI joint, mild on the left (R 435) upper lumbar pain resolved (R. 434)

July 14, 2014: back pain the same, had been feeling better due to weight loss; right buttock and leg pain decreased; right shoulder and headache pain increased; mild, moderate pain behavior; moderate SI joint tenderness (R. 760-62)

August 11, 2014: lower back, right buttock and leg pain decreased; right shoulder and headache pain the same; gait antalgic favoring right; mild pain behavior (R. 758-59)

October 8, 2014: lower back pain decreased overall, right buttock and leg pain increased, gait slow, moderate pain behavior (R. 755-56)

December 11, 2014: pain stable, overall doing okay, mild pain behavior, gait normal (R. 752-53)

January 6, 2015: lower back and right buttock pain increased, no pain behavior, no gait abnormality (R. 750-51)

February 4, 2015: plaintiff fell while sleepwalking and lower back and right buttock pain increased, moderate pain behavior, moderate SI joint tenderness (R. 747-48)

March 9, 2015: low back pain and right buttock/leg pain decreased; thoracic spine pain decreased; gait slow; mild, moderate pain behavior (R. 769-70).

So, over the course of five years, there were several instances of SI joint tenderness and antalgic gait. And, in the main, Dr. Goodman thought plaintiff's "pain behavior" was mild or at most moderate. The ALJ – aided by medical expert Dr. Munoz – reasonably found that this evidence didn't jibe with the extreme limitations Dr. Ghani thought the plaintiff had, and that was a valid reason to reject Dr. Ghani's opinion. Obviously, the plaintiff thinks otherwise, but this is simply an instance where reasonable minds could differ, and the court cannot reweigh the evidence to match the plaintiff's preferences. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch*, 981 F.3d at 602.

As the plaintiff concedes, with respect to applications filed before March 27, 2017, ALJs

must give "controlling weight" to a treating physician's opinion *if* it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019); 20 C.F.R. § 404.1527(c)(2); *see also Karr*, 989 F.3d 508, 511 (7th Cir. 2021); *Kuykendoll v. Saul*, 801 F. App'x 433, 437 (7th Cir. 2020). In this instance, Dr. Ghani's opinion was neither. And, as such, the ALJ met his minimal burden to articulate his reasoning for discounting the opinions from Dr. Ghani.

The foregoing is enough to find that the ALJ's dismissal of Dr. Ghani's opinion was supported by substantial evidence, but the ALJ also felt that the opinion was internally inconsistent. It certainly is a strain to figure out what the doctor was thinking when he said that plaintiff could only sit, stand, or walk for a grand total of three hours in a day. As Dr. Munoz pointed out, there are only four positions: sitting, standing, walking, and lying down. By limiting plaintiff to one hour of standing or walking, and two hours sitting, that meant that Dr. Ghani must have felt plaintiff had to lie down the rest of the time. (R. 920). Dr. Munoz thought plaintiff could sit for six hours. (R. 921). Additionally, Dr. Munoz wondered how, given the limitations to two hours sitting and one hour standing, plaintiff would be able to lift 10 pounds frequently – meaning one third to two thirds of the day – and 20 pounds occasionally – meaning up to one third of the day. (R. 922). SSR 83-10; *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). If plaintiff was lifting ten pounds frequently, Dr. Ghani must have thought she was doing some that while reclining. The doctor explained that it was a matter of time. (R. 921, 922). As Dr. Munoz said, the restrictions don't add up.

Along similar lines, one could add that it would also make little sense that a person who had to lie down five hours out of a workday would be able to also climb, stoop, crouch, and crawl for up to a third of the day, and balance, kneel, and reach above shoulder level for at least a third of the day

17

and up to two thirds of the day. It is a great deal of activity for someone who is restricted to a reclining position for most of every day to be able to perform. These types of inconsistencies and internal contradictions are one reason why courts have questioned the utility of these checkbox forms. *See, e.g., Trottier v. Saul*, 809 F. App'x 326, 327 (7th Cir. 2020)(criticizing doctor's opinion expressed by checking boxes rather than explaining how medical evidence supported his conclusions); *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019)(questioning persuasive value of a checklist opinion); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)(checklist observations are ... "less useful to an ALJ" than a doctor's narrative summary); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007)(". . . the "Functional Capacity Questionnaire" on which [the doctor] stated that [plaintiff] could not perform sedentary work is suspect because [plaintiff's] attorney apparently drafted it and it did not include any new medical evidence or any other basis to justify these more extreme limitations."); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)(". . . [the doctor] expressed this opinion by writing 'yes' next to a question that [plaintiff's] attorney had pre-typed. [The doctor] did not elaborate on the basis for this opinion.")

### B.

The plaintiff's other problem with the ALJ's opinion is the manner in which the ALJ considered and rejected her allegations regarding the extent of her limitations due to her impairments. Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). When assessing subjective statements, ALJs are to consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms, 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2);

(2) treatment and efficacy, id. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); (3) return to gainful activity, id. §§ 404.1571, 416.471; (4) work during disability period, id.; (5) daily activities, id. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); and (6) statements inconsistent with the record, id. §§ 404.1529(c)(4), 416.929(c)(4); *Grotts*, 27 F.4th at 1278. But, ALJs are not required to discuss every detail in the record as it relates to every factor. *Gedatus*, 994 F.3d at 903. "Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Grotts*, 27 F.4th at 1278; *Gedatus*, 994 F.3d at 901. Nevertheless, an ALJ may not ignore an entire line of evidence contrary to her ruling. *Grotts*, 27 F.4th at 1278; *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). But, in the end, as long as an ALJ gives specific reasons supported by the record, the court cannot overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). In this case, the ALJ gave valid reasons for finding the plaintiff's allegations about the extent of her limitations were not entirely credible.

First, and most significantly, the ALJ relied on the objective medical evidence. (R. 883). Again, that's entirely appropriate, *Grotts*, 27 F.4th at 1279, and in a case about a person's medical condition, it obviously should be the most important consideration. Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir.2005); *Powers v. Apfel*, 207 F.3d 431, 435–36 (7th Cir.2000). The ALJ didn't say plaintiff had no pain, just that the extent of her allegations was out of sync with the medical evidence. *See Spies v. Colvin*, 641 F. App'x 628, 634 (7th Cir. 2016)((". . . the ALJ did not disbelieve that [plaintiff] was experiencing pain, but only that the diagnosed impairments she and

her doctors identified as the source of her pain were not severe enough to disable her to the extent alleged."); *Mitze v. Colvin*, 782 F.3d 879, 881 (7th Cir.2015) ("The judge had not denied that she has pain . . . [b]ut he didn't believe that the pain was severe enough to disable her to the extent she claimed."). As the ALJ explained, the word "mild" pops up in the record a lot. "Mild" abnormalities in MRIs and x-rays of the lumbar and cervical spine, and "mild" to "moderate" pain behaviors. While objective medical evidence like that does not mean plaintiff is fine, it also doesn't necessarily mean she is completely incapable of any work. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)(MRIs revealing "mild L4–L5 disk bulge" and "mild' degenerative changes were "not an entire line of evidence that supported a finding of disability"); *Getch*, 539 F.3d at 483 ("It therefore was not patently wrong for the ALJ to conclude that, although [plaintiff's] impairments were real, [s]he had exaggerated their impact on h[er] ability to work."); Indeed, the ALJ found plaintiff was rather limited – sedentary work requires very little physical activity – she just didn't find the plaintiff as limited as the plaintiff would like. But the court can't reweigh the evidence to get to where the plaintiff thinks the ALJ should have gone. *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022); *Grotts*, 27 F.4th at 1279; *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

The ALJ also considered the course of plaintiff's treatment. (R. 883). Again, that is a perfectly acceptable consideration. *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022); *Deborah M.*, 994 F.3d at 790. As the ALJ noted, recovery following lumbar fusion went well and as expected (R. 409, 411, 413, 415), and plaintiff told her surgeon that the back surgery she had "greatly benefitted her." (R. 407). She rather consistently reported improvement in her sacroiliac pain with injections to Dr. Goodman, with pain decreasing, sometimes significantly. (R. 401, 455, 461, 469, 474, 477, 482, 487, 489). While, as the plaintiff argues, "[t]here can be a great distance between a patient who

20

responds to treatment and one who is able to enter the workforce," *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011), the overall record here supports the ALJ's decision that plaintiff is not precluded from performing sedentary work.

Finally, the ALJ considered plaintiff's activities (R. 884) which, yet again, is a valid consideration. Here, the ALJ did not ignore that plaintiff was unable to perform her daily activities without pain or limitations. She noted that while plaintiff was able to do most chores around the house, she did have difficulty bathing, dressing, caring for her hair, shaving, feeding herself, using the toilet, and cooking. *Cf. Deborah M.*, 994 F.3d at 791 (" . . . the ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal."); *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014)(ALJ may not selectively ignore limitations plaintiff has on performing activities, such as taking breaks). But, based on the medical evidence, treatment and the fact that plaintiff was able to perform daily activities and could walk her dogs, shop, and visit relatives and a friend, the ALJ didn't believe that the plaintiff was forced to spend most of every day lying down. (R. 884).

## C.

No one – including the ALJ – is saying that plaintiff doesn't experience pain, or that she doesn't continue to seek treatment, like injections, to alleviate it. But being unable to work without pain does not entitle someone to disability benefits. *See, e.g., Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)(affirming ALJ's decision noting that "[d]isability requires more than mere inability to work without pain."); *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)("Even if [plaintiff] did experience some discomfort, this alone does not establish disability."); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir.1986) ("disability requires more than mere inability to work without pain").

People working without pain or discomfort, especially after age 40 or 50, are few and far between. Even sitting at a computer and typing day after day takes a toll on the lower back and neck. Courthouses and law firms – not to mention other offices – are full of individuals doing these types of jobs with pain every day. If all it took to qualify for disability benefits was experiencing pain or discomfort while working, "eligibility for disability benefits would take on new meaning." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2nd Cir. 1983).

Complaints of pain alone are not enough to entitled plaintiff to disability benefits. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability...."); 20 C.F.R. §§ 404.1529(a); 416,929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). The plaintiff "bears the burden to prove she is disabled by producing medical evidence."); see also *Zoch*, 981 F.3d at 601. The plaintiff "bears the burden to prove she is disabled by producing medical evidence." *Gedatus*, 994 F.3d at 905; *Karr*, 989 F.3d at 513 (7th Cir. 2021)(plaintiff must "identify[ ] ... objective evidence in the record" that she is disabled); *Castile*, 617 F.3d at 927. She has produced evidence, and her interpretation of the evidence might be reasonable. But that doesn't mean the ALJ's decision is not supported by substantial evidence. Substantial evidence can be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022); *Metro-N. Commuter R.R. Co. v. United States Dep't of Lab*., 886 F.3d 97, 106 (2nd Cir. 2018), and an ALJ's decision cannot be overturned merely because reasonable minds might differ as to the import of the evidence. *Karr*, 989 F.3d at 513; *Zoch*, 981 F.3d at 602; *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

## CONCLUSION

For the forgoing reasons, the decision of the ALJ denying plaintiff's application for disability benefits is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/2/22

23